```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

SPECTRUM SOUTHEAST, LLC,          )
                                  )
          Plaintiff,              )
                                  )
     v.                           )      1:24CV963
                                  )
FOOTHILLS CABLE CONNECTIONS,      )
INC., MELISHA P. SNOW, TONY G.    )
WHITTINGTON, SCOTTIE D. CHILTON,  )
and THOMAS P. MERRILL,            )
                                  )
          Defendants.             )

## MEMORANDUM ORDER

This case is before the court on Defendant Thomas P. Merrill's motion to dismiss the amended complaint. (Doc. 28.) Plaintiff Spectrum Southeast, LLC ("Spectrum") has filed a response in opposition (Doc. 34), to which Merrill has replied (Doc. 36). For the reasons that follow, the motion will be granted in part and denied in part.

### I. BACKGROUND

Spectrum alleges that Defendants Foothills Cable Connections, Inc. ("Foothills"), Melisha P. Snow, Tony G. Whittington, Scottie D. Chilton, and Merrill conspired to defraud it of $1,371,791.70 by submitting and approving for payment, from September 2018 to April 2023, invoices for work that Foothills never performed. (Doc. 25.) Spectrum asserts claims for fraud, unfair and deceptive trade practices, conversion, and civil conspiracy. (Id.)

As relevant here, the amended complaint alleges the following with regard to Merrill1:

Merrill is a former Spectrum employee. (Id. ¶ 6.) "[A]s part of his job responsibilities," he "interacted with the other Defendants." (Id.) The amended complaint does not detail the substance, frequency, or purpose of these interactions. Spectrum alleges that "Chilton knowingly and intentionally entered false information into Plaintiff's systems regarding Local Services projects that were either fabricated or never performed by Foothills" and that "Defendants Chilton and Merrill improperly arranged for Plaintiff to pay Foothills' fraudulent invoices. (Id. ¶ 13.) The amended complaint lists 292 separate transfers that were paid but does not list any dates or explain how Merrill supposedly "improperly arranged" these payments. (Id. ¶ 14.)

During Spectrum's internal investigation of the invoices, it interviewed Merrill and Chilton, among other employees. (Id. ¶ 15.) At some unspecified point, "Chilton admitted that hundreds of work orders were not legitimate and that he knowingly and improperly used [Spectrum]'s money to pay Foothills' fraudulent invoices." (Id.)

Spectrum's first cause of action is for fraud, alleging that "Defendants represented that work had been performed and that amounts were owed to Foothills when in fact no such work had been performed and no such money was owed." (Id. ¶ 17.) Spectrum

2

concludes that "Defendants' representations that work had been performed and that money was owed were false, were known to be false, and were made with the intention to deceive Plaintiff." (Id. ¶ 18.)[1]

Spectrum's third cause of action is for conversion and asserts that "Chilton and Merrill exercised unauthorized and wrongful dominion and control over [Spectrum's] funds by knowingly and improperly using such funds to pay $1,371,791.70 to Defendant Foothills." (Id. ¶ 26.) Spectrum also alleges that "[b]y fraudulently inducing payments by Plaintiff, and by refusing to repay Plaintiff, Defendants Foothills, Snow, and Whittington have exercised unauthorized and wrongful dominion and control over Plaintiff's funds." (Id. ¶ 27.)

Spectrum's fourth cause of action asserts civil conspiracy, alleging that each Defendant is jointly and severally liable because the "foregoing misconduct was the result of a common plan or scheme by Defendants." (Id. ¶ 31.)

Merrill seeks dismissal of the amended complaint for failure to state a claim upon which relief can be granted. (Doc. 28.)

**II. ANALYSIS**

Federal Rule of Civil Procedure 8(a)(2) provides that a

---

[1] Spectrum dismissed without prejudice its second cause of action against Merrill alleging unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1 et seq. (Doc. 33.)

pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Thus, mere legal conclusions should not be accepted as true, and

4

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

### A. Fraud

Merrill argues that Spectrum failed to plead fraud by him with particularity. (Doc. 29 at 3–5 (citing Fed. R. Civ. P. 9(b)).) Spectrum responds that the amended complaint alleges that Merrill is liable both for "his conduct and that of his co-conspirators," and therefore states plausible claims against him. (Doc. 34 at 5.) Spectrum contends that it was not required to allege that Merrill "made a false statement as part of the conspiracy to defraud or received a tangible benefit as a result of the fraud" to state a viable fraud claim against him. (Id. at 9.)

In North Carolina, the elements of a fraud claim are a "(1) [f]alse representation or concealment of a material fact," which is "(2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive," and "(5) result[s] in damage to the injured party." Forbis v. Neal, 649 S.E.2d 382, 387 (N.C. 2007). "A complaint charging fraud must allege these elements with particularity." Hunter v. Spaulding, 388 S.E.2d 630, 634 (N.C. App. 1990) (citation omitted); see also Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

5

mistake.") To do so, a plaintiff must allege "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Edmondson v. Eagle Nat'l Bank, 922 F.3d 535, 553 (4th Cir. 2019) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)); see Terry v. Terry, 273 S.E.2d 674, 678 (N.C. 1981) (similar).

Merrill is correct that Spectrum has failed to state a viable fraud claim against him. The amended complaint is short on factual allegations indicating that Merrill knew of the alleged fraud and knowingly participated in it – as opposed to simply knowingly approving the invoices.

The amended complaint alleges that Merrill "was previously employed by [Spectrum]" and "interacted with the other Defendants," that, along with Chilton, he "improperly arranged for [Spectrum] to pay Foothills' fraudulent invoices" and "exercised unauthorized and wrongful dominion and control over [Spectrum]'s funds by knowingly and improperly using such funds to pay $1,371,791.70 to Defendant Foothills," and that Spectrum interviewed him during the course of investigating the fraud. (Doc. 25 ¶¶ 6, 13, 15, 26.) Although the amended complaint alleges that "Defendants knowingly submitted false or altered documentation with, or in support of, the fraudulent invoices" and "included with the fraudulent invoice photographs that were not of

6

the property in question (Doc. 25 ¶ 12), there is only a conclusory allegation that Merrill "improperly arranged for Plaintiff to pay Foothills' fraudulent invoices (id. ¶ 13); there is no allegation he knew the invoices were fraudulent. And there are no facts pleaded supporting an inference that Merrill arranged payment of the invoices with the intent to deceive Spectrum.

Spectrum places great weight on its allegation that Merrill "improperly" paid Foothills' invoices. (Doc. 34 at 9.) On this record, labelling Merrill's acts as "improper" does not sufficiently allege fraud. Merriam-Webster's dictionary defines "improperly" as "not in accord with propriety, modesty, good manners, or good taste"; "not suited to the circumstances, design, or end"; "not regularly or normally formed or not properly so called"; and "not in accord with fact, truth, or right procedure ." Improper, Merriam-Webster, https://www.merriam-webster.com/dictionary/improper (last visited July 30, 2025). Black's Law Dictionary defines "improper" as "1. Incorrect; unsuitable or irregular. 2. Fraudulent or otherwise wrongful." Black's Law Dictionary 826 (9th ed. 2009). In addition to being unclear which of these meanings Spectrum alleges as to Merrill (not all of them would support a claim for fraud), even an intent to convey that Merrill acted fraudulently would do little more than state a legal conclusion. Further, the amended complaint's repeated practice of claiming that "Defendants" performed certain acts, without

7

attributing the acts to a particular Defendant, does not save Spectrum's fraud claim against Merrill. (See, e.g., Doc. 25 ¶¶ 12, 17-19.) This fails to meet Rule 9's requirement that a fraud claim be pleaded with particularity. In short, the amended complaint simply does not describe Merrill's role at Spectrum or his involvement in approval of the invoices so as to allege knowing and willful involvement in an attempt to defraud Spectrum.

Spectrum's argument that the court should construe the alleged actions of Foothills and Chilton as Merrill's acts because it has alleged a civil conspiracy is unpersuasive. (Doc. 34 at 9-10.) True, Merrill could be held liable for a fraud if he conspired to participate in it. But as noted below, the factual allegations of conspiracy fall short as to him. Spectrum pleaded that Merrill "interacted" with the Defendants as part of his employment. (Id. at 6.) This allegation does not render plausible an inference that Merrill conspired with the remaining Defendants to defraud Spectrum. The first cause of action for fraud therefore fails to state a claim against Merrill.

### B. Conversion

Merrill contends that Spectrum's conversion claim "fails as a matter of law" because Spectrum did not allege that he "exercised ownership over any goods or property belonging to" Spectrum. (Doc. 29 at 7.) He also argues that Spectrum has not asserted that he refused to return Spectrum's property after a demand, that he

8

possessed the funds, or that he "caused the payment to Foothills to happen." (Id. at 8.) Alternatively, he argues that to the extent Spectrum's conversion claim relies on transactions that occurred prior to November 19, 2021, it is barred by the statute of limitations. (Id. at 8-9.)

Spectrum argues that Merrill misapprehends the standard for pleading a viable conversion claim under North Carolina law. (Doc. 34 at 13.) It contends that its allegation that Merrill "took unauthorized control over Spectrum's funds and improperly diverted those funds to Foothills" in furtherance of the alleged conspiracy sufficiently pleads a conversion claim without regard to whether he benefitted from the transaction or acted with malicious intent. (Id.) Spectrum also disputes that the statute of limitations bars any portion of its claim on the grounds that the court should apply the continuing violation doctrine to determine when the statute of limitations was triggered. (Id. at 12-13.)

Under North Carolina law, conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 723 S.E.2d 744, 747 (N.C. 2012) (citation omitted). The two essential elements of this claim are (1) ownership in the plaintiff and (2) wrongful possession or conversion by the defendant. Id. A party

9

claiming conversion must show both that it retained lawful ownership of the chattel and a right to immediate possession of the chattel. See id.; Patterson v. Allen, 197 S.E. 168, 168 (N.C. 1938). "A successful claim of conversion requires that the plaintiff maintain a right of possession of the property superior to that of the alleged converter from the time of the disputed action th[r]ough the time of suit." Interstate Narrow Fabrics, Inc. v. Century USA, Inc., 218 F.R.D. 455, 467 (M.D.N.C. 2003) (citing United States v. Currituck Grain, Inc., 6 F.3d 200, 205 (4th Cir. 1993)).

In North Carolina, "money may be the subject of an action for conversion only when it is capable of being identified and described." Variety Wholesalers, 723 S.E.2d at 750 (quoting Alderman v. Inmar Enters., Inc., 201 F. Supp. 2d 532, 548 (M.D.N.C. 2002)). A sum of funds is sufficiently identified where the plaintiff describes "the specific source, specific amount, and specific destination of the funds in question." Id. at 750-51. Importantly, "[t]he essence of conversion is not the acquisition of the property by the wrongdoer, but a wrongful deprivation of it to the owner . . . and in consequence it is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from the act." Id. at 751 (quoting Mace v. Pyatt, 691 S.E.2d 81, 90 (N.C. App. 2010)).

Here, the amended complaint alleges that "Chilton and Merrill

10

exercised unauthorized and wrongful dominion and control over [Spectrum]'s funds by knowingly and improperly using such funds to pay $1,371,791.70 to Defendant Foothills." (Doc. 25 ¶ 26.) Although Merrill argues that Spectrum did not allege that he received Spectrum's funds or obtained a benefit from the alleged scheme, he has not identified any relevant authority suggesting that the alleged unauthorized diversions of Spectrum's property fail to support a conversion claim. In fact, the contrary appears true. "In North Carolina, while the tort of conversion necessarily involves an intentional act, the intention need not be wrongful." Madey v. Duke Univ., 336 F. Supp. 2d. 583, 600 (M.D.N.C. 2004) (citation modified). Moreover, "the essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation to the owner and in consequence it is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from the act." Mace, 691 S.E.2d at 90 (citation modified). While slim of factual development, this claim alleges that Merrill, in his capacity as a Spectrum employee, knowingly and without authorization approved payments on these invoices. This plausibly alleges a claim for conversion.

Merrill argues, alternatively, that the statute of limitations has lapsed for several of the transactions alleged in the amended complaint. North Carolina applies a three-year statute of limitations to conversion claims. N.C. Gen. Stat. § 1-52(4);

11

Marzec v. Nye, 690 S.E.2d 537, 541 (N.C. App. 2010). This action was filed on November 19, 2024. (Doc. 1.) Therefore, if Merrill were correct, Spectrum's claims related to transfers that occurred more than three years prior to November 19, 2024, would be barred by the statute of limitations. Spectrum has argued, however, that the court should apply the continuing wrong doctrine to determine that the statute of limitations began running when "the unlawful acts ceased in 2023." (Doc. 34 at 12-13.)

At this stage, the court cannot conclude that Spectrum's conversion claim is barred by the statute of limitations. As Merrill argues, "the statute of limitations for conversion generally begins running at the time a defendant asserts dominion over the property." Marzec, 690 S.E.2d at 543 (citing White v. Consol. Plan., Inc., 603 S.E.2d 147, 165-66 (N.C. App. 2004)). However, "the continuing wrong doctrine is an exception to the general rule that a cause of action accrues as soon as the plaintiff has the right to sue." Stratton v. Royal Bank of Canada, 712 S.E.2d 221, 229-30 (N.C. App. 2011) (citations omitted). Where the doctrine applies, "the statute of limitations does not start running until the violative act ceases." Marzec, 690 S.E. 2d at 542 (citation modified). "However, in order for the continuing wrong doctrine to toll the statute of limitations, the plaintiff must show [a] continuing violation by the defendant that is occasioned by continual unlawful acts, not by continual ill

12

effects from an original violation." Stratton, 712 S.E.2d at 229 (quoting Marzec, 690 S.E.2d at 542) (alteration in original) (internal quotation marks omitted). In considering whether to apply the doctrine, North Carolina courts consider "the particular policies of the statute of limitations in question, as well as the nature of the wrongful conduct and harm alleged." Id. (citation modified).

Here, Spectrum alleges that Merrill's acts were separate but continuing violations. Determining whether Spectrum's injury stems from a series of wrongful acts (and therefore the continuing wrong doctrine applies) or whether it has endured continued harm from a single violation will require the court to conduct factfinding that is not suited for a motion to dismiss. See Babb v. Graham, 660 S.E.2d 626, 637 (N.C. App. 2008) (concluding that the continuing wrong doctrine applied to plaintiff's breach of fiduciary duty claim where plaintiff alleged that the defendant trustee "continuously refused to make distributions under the trusts until he was removed as trustee"); see also Rodrigue v. Olin Emps. Credit Union, 406 F.3d 434, 445 (7th Cir. 2005) (observing that the continuing wrong doctrine is based on the notion "that where a cause of action arises from the cumulative nature or impact of a series of acts that occur over time, it can be difficult for the plaintiff to discern at any particular point during that time the wrongful and injurious nature of the

13

defendant's conduct") (citations omitted). Moreover, the complaint does not identify the dates on which Spectrum alleges Merrill made the purportedly unauthorized transfers. The court therefore cannot determine whether the claim is barred by the statute of limitations. See Marzec, 690 S.E.2d at 543-44 (declining to apply the continuing wrong doctrine but concluding that where the complaint failed to allege when Defendants' "act exercising dominion over the funds" occurred, the court could not "determine from the allegations of the complaint that the conversion claim is barred by the statute of limitations"). Accordingly, Merrill's motion to dismiss based on the statute of limitations will be denied at this time.

### C. Civil Conspiracy

Spectrum's fourth cause of action alleges civil conspiracy. Civil conspiracy is not a freestanding cause of action in North Carolina. Shope v. Boyer, 150 S.E.2d 771, 773-74 (N.C. 1966). Rather, "[t]he charge of conspiracy itself does nothing more than associate the defendants together . . . to the extent that under proper circumstances the acts and conduct of one might be admissible against all." Id. at 774 (citing Muse v. Morrison, 66 S.E.2d 783, 785 (N.C. 1951)). To prove a civil conspiracy, Spectrum would have to show (1) an agreement between two or more persons to commit a wrongful act; (2) an overt act in furtherance of the agreement; and (3) damage to the plaintiff as a result of

14

the wrongful act. <u>Suntrust Mortg. Inc. v. Busby</u>, 651 F. Supp. 2d 472, 488 (W.D.N.C. 2009); <u>Pleasant Valley Promenade v. Lechmere, Inc.</u>, 464 S.E.2d 47, 54 (N.C. App. 1995). Furthermore, "[b]ecause liability attaches as a result of the wrongful act committed, not the agreement itself, the existence of an underlying tortious act is the key to establishing a civil conspiracy." <u>Eli Rsch., Inc. v. United Commc'ns. Grp., LLC</u>, 312 F. Supp. 2d 748, 763 (M.D.N.C. 2004) (citation omitted).

Here, Spectrum's allegations of an agreement are conclusory and devoid of factual development. Spectrum argues that the amended complaint alleges that "Merrill and Chilton knowingly and improperly used Spectrum's funds to pay invoices for Local Services that Foothills never performed" (Doc. 34 at 9), but the amended complaint actually alleges that <u>Chilton</u> "knowingly and intentionally entered false information into [Spectrum]'s systems" and that <u>Merrill</u> "improperly arranged for [Spectrum] to pay Foothills' fraudulent invoices." (Doc. 25 ¶ 13.) There is no factual allegation plausibly suggesting that Merrill's "improper arrangement" was the product of an agreement between Merrill and Chilton or any other Defendant. As Merrill concedes, Spectrum's allegation supports an inference that he "authorized the payment to Foothills," but there are no factual allegations that he did so with knowledge the transfers were fraudulent or as part of an agreement with his co-Defendants to defraud Spectrum. (Doc. 36 at

15

8.) Because Spectrum's allegations of an agreement are insufficient, this claim also fails.

* * *

Spectrum has requested that the court permit it to seek to amend its complaint if the court found dismissal warranted as to any claim. (Doc. 34 at 12.) Ordinarily, the complaint would be dismissed without prejudice. But to avoid any adverse impact based on possible statute of limitations issues, the court will withhold dismissal for 14 days to permit Spectrum to file a motion to amend the complaint should it wish to do so. If Spectrum fails to move to amend within that time, the court will dismiss the fraud and conspiracy claims without prejudice.

## III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that Merrill's motion to dismiss (Doc. 28) will be granted as to Spectrum's claims for fraud (first cause of action) and civil conspiracy (fourth cause of action), and those claims will be dismissed without prejudice, unless within 14 days Spectrum moves to amend the complaint to correct the deficiencies noted herein.

                                                /s/   Thomas D. Schroeder
                                            United States District Judge

August 5, 2025

16

Case 1:24-cv-00963-TDS-JEP   Document 37   Filed 08/05/25   Page 16 of 16